UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD SCOTT,<br><br>                Plaintiff,<br>    v.<br><br>HAVENS,<br><br>               Defendant. | Case No. 2:25-cv-00648-RAJ-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for <u>November 14, 2025</u> |

       This is a civil rights action proceeding under 42 U.S.C. § 1983[1]. Plaintiff Richard Scott, proceeding *pro se*, is confined at the Special Commitment Center ("SCC"). *See* Dkt. 1. Plaintiff alleges in this action that he has received inadequate medical care in violation of his constitutional rights and the Americans with Disabilities Act ("ADA"). Dkt. 1.

       This matter comes before the Court on the motion of defendant Dr. Havens to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 9. Plaintiff filed a response opposing defendant's motion. Dkt. 11. In reviewing plaintiff's response, the Court found some pages to be illegible, and therefore, requested that plaintiff re-file the illegible pages. Dkt. 15. Plaintiff filed another copy of

---

[1] Plaintiff has a long history of abusive litigation tactics and is the subject of case management orders in the Western District of Washington. *See Scott v. Seling*, et al., No. 3:04-cv-05147-RJB, Dkt. 152 (W.D. Wash. Dec. 8, 2004) (case management order entered in six total cases on same date); *Scott*, No. 3:04-cv-05147-RJB, Dkt. 170 (case management order entered in eleven total cases on same date); *Scott v. Weinberg*, et al., No. 3:06-cv-05172-FDB, Dkt. 95 (W.D. Wash. Mar. 27, 2007). Such orders do not apply in this case because plaintiff has paid the full filing fee. *See docket*.

REPORT AND RECOMMENDATION - 1

his original motion on September 15, 2025, but did not correct the illegible pages. Dkt. 17.

The Court, having considered plaintiff's complaint, defendant's motion to dismiss, all briefing of the parties, and the governing law, concludes that defendant's motion should be granted, and plaintiff should be granted leave to amend his complaint.

## FACTUAL BACKGROUND

Plaintiff, a 77-year-old detainee, alleges Dr. Havens, the Medical Department Director at SCC, acted with deliberate indifference when Dr. Havens "asked the physical therapist to take Scott down a flight of stairs," and his pulse "jumped to 170." He states he received a "medical HSR" for no more than 6 stairs and suffers from shortness of breath and vertigo. Dkt. 1 at 2-3.

Plaintiff further alleges he was diagnosed with diabetes, as having "high ACi," COPD, dementia and a thyroid condition. *Id.* at 3. He asserts that X-rays have shown that plaintiff's neck is arthritic and he has a growth in his lungs. *Id.* He alleges Dr. Havens has refused to increase plaintiff's Alzheimer medications "as recommended over time." *Id.* He also states he has not received treatment or medication for his high "ACi", diabetes, or shortness of breath. *Id.* Plaintiff states he was "recently" seen in the trauma room for shortness of breath and high blood pressure. *Id.* at 3.

Plaintiff also complained of involuntary bowel movements and asked for diapers but was denied that request. *Id.* at 3, 4. Plaintiff did not identify who he complained to or who denied his request for diapers.

Plaintiff states he asked to see an optometrist 10 times over the last 9 months due to eye pain but was not permitted to do so. Plaintiff did not identify the name of

person(s) responsible and he does not assert that he communicated with a particular person about his request or the official position or job classification of the person.

Plaintiff next alleges Dr. Havens refused to allow plaintiff to purchase transitional glasses despite having the appropriate prescription. *Id.* at 4.

He asserts he has experienced episodes of lower back pain when standing and has asked for a walker with a seat, but plaintiff asserts he was "not even seen" despite Dr. Havens allegedly having knowledge that plaintiff "wonders/weaves" when he walks, "often bouncing off walk or other persons." *Id.*

Plaintiff requests $50,000 in damages and "any other relief the court feels is needed to correct constitutional and ADA violations." *Id.* at 5.

# DISCUSSION

## A.    Legal Standards

### 1.    Motion to Dismiss Standard

Defendant moves to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff fails to adequately state a claim for relief under § 1983. Dkt. 9. A defendant may move for dismissal under this rule when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

REPORT AND RECOMMENDATION - 3

misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). But the Court "may not supply essential elements of the claim that were not initially pled[,]" *Pena*, 976 F.2d at 471, and "'conclusory allegations of law and unwarranted inferences' will not defeat an otherwise proper motion to dismiss," *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007) (citations omitted).

    2.    Section 1983 Standard

To sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or

omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

A supervisor is liable for acts of subordinates when the supervisor either participates in or directs subordinates in committing violations or knows of the violations being committed by subordinates and fails to take action to prevent them. *Vasquez v. County of Kern,* 949 F.3d 1153, 1166 (9th Cir. 2020).

Plaintiff must assert sufficient facts to show that a defendant whose individual actions do not rise to the level of a constitutional violation, was nevertheless an integral participant in the violation of plaintiff's federal statutory or constitutional rights, based on facts that establish either: "(1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck v. Montoya,* 51 F.4th 877, 891 (9th Cir. 2022). Supervisors may not, however, be held liable merely for being present at the scene of a constitutional violation or for being a member of the same operational unit as a wrongdoer. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (citing *Jones v. Williams*, 297 F.3d 930, 936–37 (9th Cir. 2002)).

Liability cannot be imposed based on a team effort – the plaintiff must allege facts to show more than but-for causation – plaintiff must assert facts regarding each individuals' knowledge or intent, and each individual's acts or failure to act. *Peck v. Montoya,* 51 F.4th at 890-891. A mere bystander cannot be liable under section 1983; "an official whose individual actions do not themselves rise to the level of a constitutional violation may be held liable under section 1983 only if the official is an integral participant in the unlawful act." *Id.* at 889 (citations and internal quotation marks omitted).

Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988). A plaintiff must set forth the specific factual basis supporting his claim for each defendant's liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

To prevail on a claim against a defendant that acts, or omits to act, in the role of supervisor, plaintiff would be required prove each of the following elements by a preponderance of the evidence, according to the Ninth Circuit's Pattern Civil Jury Instructions for civil rights actions under § 1983:

1. the supervisory defendant acted under color of state law;

2. the [act[s]] [failure to act] of the supervisory defendant's subordinate[s] [*name[s]*] deprived the plaintiff of particular rights under [the laws of the United States] [the United States Constitution] as explained in later instructions;

3. [the supervisory defendant directed subordinate[s] in the [act[s]] [failure to act] that deprived the plaintiff of these rights;]

or

[the supervisory defendant set in motion a series of acts by subordinate[s], or knowingly refused to terminate a series of acts

REPORT AND RECOMMENDATION - 6

by subordinate[s], that the supervisor knew or reasonably should have known would cause the subordinate[s] to deprive the plaintiff of these rights;]

*or*

[(a)  the supervisory defendant knew that the subordinate[s] were engaging in these act[s] and knew or reasonably should have known that the subordinate['s][s'] conduct would deprive the plaintiff of these rights; and

(b)  the supervisory defendant failed to act to prevent the subordinate[s] from engaging in such conduct;]

*or*

[(a)  the supervisory defendant disregarded the known or obvious consequence that a particular training deficiency or omission would cause [his][her] subordinate[s] to violate the plaintiff's constitutional rights; and

(b)  that deficiency or omission actually caused the subordinates to deprive the plaintiff of plaintiff's constitutional rights;]

*or*

[the supervisory defendant engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others;]

*and*

4.  The supervisory defendant's conduct was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

Ninth Circuit Civil Pattern Jury Instruction 9.4 (updated March 2025).

Though plaintiff's pleading is not entirely clear, he appears to assert an independent claim of denial of adequate medical care against defendant Havens. Plaintiff's medical care claim implicates his rights under the Fourteenth Amendment. Such claims are governed by the standard set forth in *Youngberg v. Romero*, 457 U.S.

REPORT AND RECOMMENDATION - 7

307, 321-22 (1982). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* Because of this, the court evaluates a civilly committed detainee's claims under the Fourteenth Amendment, rather than the Eighth Amendment, and determines whether the plaintiff's allegations fall into the "professional judgment" articulated in *Youngberg*, 457 U.S. at 321–324. *See Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016); *Samuels v. Ahlin*, 2017 WL 6594635 at *5 (E.D. Cal. 2017).

      A plaintiff must establish that the defendant's "'conduct diverge[d] from that of a reasonable professional.'" *Mitchell*, 818 F.3d at 443 (quoting *Ammons v. Wash. Dep't of Soc. & Health Serv.*, 648 F.3d 1020, 1027 (9th Cir. 2011)). "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Mere negligence or medical malpractice is not sufficient to demonstrate a constitutional violation. *See Patten v. Nichols*, 274 F.3d 829, 842–43 (4th Cir. 2001) (applying *Youngberg* to a denial of medical care for a civilly committed psychiatric patient and holding more than negligence is required to state a constitutional violation).

      Plaintiff fails to allege sufficient facts to state a Fourteenth Amendment claim against defendant Havens relating to the adequacy of the medical care he is receiving at SCC. In his pleading, plaintiff lists medical issues and notes the reasons he believes the responses to at least some of the identified issues have been unsatisfactory. That

plaintiff was dissatisfied with the responses he received to his medical issues does not give rise to an inference that Dr. Havens did not exercise reasonable professional judgment in relation to his care.

Plaintiff alleges only one instance where Dr. Havens personally participated in a medical decision affecting plaintiff's treatment – plaintiff alleges Dr. Havens declined to increase his medication. At most plaintiff claims that Dr. Havens was aware that plaintiff "wonders/weaves" but "refuses to give him a walker." Dkt. 1 at ¶ 3.25. This allegation potentially may state a claim for state law negligence or medical malpractice but is insufficient to state a claim for a federal constitutional violation. "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Mere negligence or medical malpractice is not sufficient to demonstrate a constitutional violation. *See Patten v. Nichols*, 274 F.3d at 842–43.

Plaintiff does not explicitly name Dr. Havens as a defendant in her supervisory role. But even if the Court construes plaintiff's complaint liberally and infers plaintiff intended to name Dr. Havens as a defendant in her supervisory role, he fails to show either personal involvement in the constitutional deprivation or that Dr. Havens was involved less directly -- by supervising others as described in the other factual scenarios (see Ninth Circuit Civil Pattern Instruction 9.4, above) that would show a sufficient causal connection between Dr. Havens' alleged wrongful conduct and the constitutional violation. *See Peck v. Montoya,* 51 F.4th 877, 891 (9th Cir. 2022).

In the remainder of the complaint, plaintiff either relies on vague references to "medical staff" or does not identify an individual responsible for the alleged constitutional violations at all. For example, plaintiff states he was seen in the trauma room for shortness of breath and high blood pressure and complained about involuntary bowel movements. Dkt. 1 at 3. He also separately alleges he asked to see the optometrist several times but was unable to and asked for diapers to help with his involuntary bowel movements but was denied that request.

Plaintiff failed to connect these allegations to Dr. Havens or any other individual. He does not identify what Dr. Havens knew, when she knew it, whether she acted or failed to act, or any facts that would show causation. And, plaintiff's Fourteenth Amendment claim against Dr. Havens is insufficient because he fails to assert any facts directly connecting defendant Havens to the medical care decisions at issue. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.").

Thus, plaintiff's Fourteenth Amendment claim against Dr. Havens should be DISMISSED.

3. Americans with Disabilities Act

Defendant also argues that plaintiff has not alleged sufficient facts to support a claim for a violation of the ADA. Title II of the ADA provides in pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

In order to state a claim of disability discrimination under Title II of the ADA, plaintiff must allege four elements: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services ... or was otherwise discriminated against by the public entity; and (4) such exclusion, denial ... or discrimination was by reason of his disability." *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004). Title II applies to confinement facilities like prisons and jails. *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 213 (1998) (the "plain text of Title II of the ADA unambiguously extends to state prison inmates"). The Ninth Circuit has explained that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)).

Here, plaintiff does not explicitly state he has a disability under the ADA, but the complaint describes several impairments, including Alzheimer's disease, dementia, and diabetes. Even if the Court assumes for purposes of this analysis that plaintiff has alleged a disability under the ADA , plaintiff does not allege that he was prevented from participating in or benefitting from SCC programs or services because of a disability. The complaint claims that he has not been provided the treatment required for his conditions; he does not assert anywhere in his complaint that he was *discriminated* against because of his disabilities. A claim asserted under the ADA is not the appropriate mechanism for challenging the lack of treatment for a medical condition. Plaintiff's ADA claim should therefore be dismissed.

REPORT AND RECOMMENDATION - 11

### 4. Leave to Amend

The Ninth Circuit has "established that a pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). In dismissing for failure to state a claim under Rule 12(b)(6), "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal citations and quotation marks omitted).

The plaintiff would potentially be able to overcome the deficiencies in his complaint with respect to his § 1983 claim and ADA claim against defendant Havens, if there are additional facts and contentions that he could allege and support his claims. Accordingly, plaintiff's claims against defendant Havens should be dismissed without prejudice and with leave to amend within thirty (30) days of the order adopting this report and recommendation. If plaintiff files an amended complaint, he is required to file a new document identified as the amended complaint. The Court will not recognize an addendum to the current complaint, or separate brief to add claims to the current complaint; the amended complaint would be a complete substitute for the current proposed complaint and may not be filed an attachment or supplement.

### CONCLUSION

For the reasons set forth above, this Court concludes that plaintiff has not adequately stated any claim for relief against defendant Havens and therefore recommends that defendant's motion to dismiss under Rule 12(b)(6) be GRANTED.

The Court further recommends that plaintiff's claims against defendant Havens should be dismissed without prejudice and with leave to amend within thirty (30) days of the order adopting this report and recommendation.

A proposed Order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **November 14, 2025**, as noted in the caption.

Dated this 30th day of October, 2025.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13